IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARAMOUNT PICTURES CORP. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN DAVIS | : | NO. 05-0316 |
| | | |
| O'NEILL, J. | | JULY 26, 2006 |

<u>MEMORANDUM</u>

Plaintiff, Paramount Pictures Corp., filed a John Doe complaint on January 21, 2005 under the Copyright Act of 1976, 17 U.S.C. § 101, et seq., claiming that defendant, later identified as John Davis, pro se, a self employed computer consultant, violated its exclusive rights to reproduce and distribute plaintiff's motion picture, "Lemony Snicket's: A Series of Unfortunate Events," by willfully and knowingly obtaining an illegal digital copy of the motion picture and making the motion picture available for digital distribution via an internet distribution system named eDonkey one week after the motion picture's theatrical release date. Plaintiff seeks a permanent injunction precluding defendant from infringing upon its motion picture copyrights under 17 U.S.C. § 502(a) and $50,000 in statutory damages under 17 U.S.C. § 504(c).

Following a nonjury trial on February 27, 2006, post trial briefs, and oral argument on July 18, 2006, I now enter the following Findings of Fact and Conclusions of Law as required by Federal Rule of Civil Procedure 52(a). For the reasons set forth below, I find that plaintiff has proved by a preponderance of the evidence that defendant infringed upon plaintiff's copyright. I will therefore grant plaintiff's requested permanent injunction and award it $50,000 in statutory damages.

1

FINDINGS OF FACT

The background facts of this case are discussed in my memorandum and Order of December 2, 2005 denying the parties' cross motions for summary judgment.  However, the following facts were established at trial.

I.      The Motion Picture

Paramount owns a valid copyright to the motion picture, "Lemony Snicket's: A Series of Unfortunate Events."  Paramount is the exclusive licensee of distribution rights to the picture and has the right to enforce the copyright against an infringer.  The motion picture cost over $100 million to produce.  It was released in theaters on December 17, 2004, as part of Paramount's 2004 December holiday releases, and on DVD/home video on April 26, 2005.   Paramount did not authorize any private individual to copy and distribute the motion picture via any means.

II.     BayTSP

Prior to the motion picture's theatrical release, Paramount instructed BayTSP, an internet detective agency, to search the eDonkey peer-to-peer ("P2P") network and identify first propagators of the motion picture.  Mark Ishikawa, CEO and founder of BayTSP and an experienced ex-hacker,[1] testified that on December 23, 2004 at 11:49:52 AM Eastern Standard Time, BayTSP located an eDonkey user offering for download 100% of a file labeled "lemony snickets 'jim carey'.mpg" with the IP address 69.141.202.170.  An IP address is a unique number assigned to an internet service subscriber by one's internet service provider ("ISP") while one is connected to the internet.  It is a matter of public record which IP addresses are assigned to each

---

[1] I find Ishikawa's testimony to be credible notwithstanding the fact that he admitted to breaking into a small number of company's computer systems twenty years ago.

ISP.  BayTSP downloaded segments of the digital file from the individual and identified the

unique IP address being used as one assigned to Comcast.

BayTSP also concluded that this individual was a first propagator of the motion picture.

A first propagator is a user who obtains a unique illegal digital copy of a motion picture and is

the first person to place that copy on a P2P network, making it available for download to millions

of people.  BayTSP determined that the identified user was a first propagator because he or she

was the first user to offer this particular file with a unique hash value and he or she offered for

download a file that contained 100% of the picture.  Paramount confirmed that this file was its

motion picture.

III.    This Court's Order

Paramount filed a John Doe lawsuit in this Court on January 21, 2005 against the

unnamed infringer because Comcast resides in this District.  Paramount simultaneously filed a

motion to serve discovery prior to the Rule 26(f) conference seeking leave from the Court to

serve Comcast with a subpoena for the infringer's true identity by use of the IP address and date

and time of infringement.  My deceased colleague, Judge Kelly granted this motion, and on

March 3, 2005, Paramount served Comcast with the subpoena.  Before responding to the

subpoena, Comcast informed the infringer (its subscriber) in writing on March 9, 2005 of the

lawsuit against him and its intention to respond to the subpoena by revealing his identity.  This

letter included a copy of this Court's March 1, 2005 Order which allowed Paramount to seek the

identity of the infringer.  This Court's Order did not name John Davis specifically, but the letter

from Comcast to Davis was clear that Paramount had filed a lawsuit against an individual, that

Paramount was seeking the identity of that individual, and that Comcast was about to disclose

Davis' identity to Paramount as that individual.

IV.    Michael Coard, Esquire

Davis has submitted an unauthenticated email from Michael Coard, Esq. dated March 20, 2005 in which Coard advised Davis: (1) that Davis and Coard would not contest this Court's March 1, 2005 Order, but would submit a formal notice of their concern to serve as a "letter of protection"; (2) that Davis was "NOT being sued" but rather that he was "simply one of hundreds if not thousands of Comcast subscribers who might possibly be named as defendants if later information shows you and/or them to be liable"; (3) that "this case is not even at the lawsuit stage" but "[i]nstead it is at the 'discovery' stage, which means that it is at the 'fishing expedition' stage wherein Paramount is merely trying to figure out whom to sue"; and (4) "[d]on't worry at all.  Based on what you told me Friday night, you have absolutely nothing to be concerned about."  Davis also submits an unauthenticated letter (presumably the "letter of protection") from Coard to Sharma Austin, Policy Abuse Legal Analyst at Comcast, dated March 29, 2005 in which Coard states that "Davis does not contest the March 1, 2005 court order and has no objection thereto" and seeks to confirm that Paramount via this Court's Order to Comcast is not seeking information from Davis "beyond merely his name, street address, and e-mail address."

V.    Comcast

Gary Lipscomb, Comcast's Senior Manager of Network Abuse and Policy, testified that Comcast assigns its subscribers unique IP addresses to track their subscribers connectivity to the network in order to bill them for that time and monitor for any malicious activity.  The accuracy of Comcast's billing records and the integrity of its network rely upon keeping accurate track of

its subscriber's IP addresses.  Comcast receives over 600 subpoenas a month requesting

subscribers' identities based upon the subscriber's IP address and date/time of activity.  Ninety

percent of these subpoenas are from law enforcement agencies investigating serious crimes, such

as pornography and bomb threats.

Comcast responds to subpoenas of this kind in the ordinary course of its business.

Comcast conducts a forensic investigation of the data and undertakes three levels of quality

control before releasing subscribers' identities pursuant to subpoena.  Comcast does not release a

subscriber's identity if any potential error is discovered during the quality control process.  After

following this procedure and notifying him of the lawsuit and subpoena, Comcast identified John

Davis as the suspected infringer on March 30, 2005.  On May 26, 2005, Paramount filed an

amended complaint naming Davis as the John Doe defendant.  Davis was served with the

complaint and summons on June 2, 2005.

VI.     Kroll Ontrack Electronic Evidence Services

Paramount requested access to Davis' Macintosh G4 Cube computer in order to

investigate the hard drives of his computer by a third party forensic specialist, Kroll Ontrack

Electronic Evidence Services.  Brian Halpin, one of Kroll's computer forensic examiners and

former FBI agent, testified that his analysis of Davis' computer revealed that on March 25, 2005

Davis wiped his hard drive clean of all data and then reinstalled an operating system.  He also

testified that Davis had taken further steps beyond reformatting his computer to eliminate any

and all data from the computer's "unallocated space," which could have been recovered via

forensic means.  The effect of Davis' wiping the hard drive clean of all data was to make it

impossible to determine whether the motion picture or eDonkey software was on the computer

prior to March, 25, 2005.  Although it is possible that Halpin could have recovered the deleted information via another forensic means, Halpin testified that such a method is prohibitively expensive outside of the government's antiterrorism efforts.

Davis claims that he wiped his hard drive clean in preparation for selling it to Stephanie Seymour for $390 on March 30, 2005.  Davis supported his claim with an unauthenticated receipt from the purchase of a new computer on March 1, 2005, an unauthenticated print out of a series of his emails from February 2005 regarding the potential sale of the computer, and an unauthenticated letter dated October 27, 2005 to this Court from Seymour, in which she states: (1) that she expressed an interest in buying the computer in February 2005; (2) that Davis had emailed her a picture of the computer on February 23, 2005; (3) that she was supposed to pick up the computer on March 30, 2005; (4) that she was precluded from picking up the computer because of "legal reasons"; and (5) that as a result of her own financial situation did not purchase the computer until September 30, 2005.

The operating system found on the computer in July 2005 during Halpin's investigation was MAC OS 9.2.2.  Although this operating system is incompatible with the eDonkey network there is no evidence of what operating system was in place at the time of the alleged infringing activity.  MAC OS 9.2.2 was last sold in late 2001, approximately five years ago, and MAC OS X was released earlier that same year.

VII.    Davis' Evidence

At trial, as was his right, Davis did not testify and did not call any witnesses.  Davis however did offer into evidence a number of unauthenticated documents in support of his defense.  Although these documents are unauthenticated, Paramount did not object to their

6

admission and I will therefore consider them.  However, Davis' own statements in cross

examination and at oral argument do not constitute evidence and will be disregarded.

Specifically, Davis' statement during his cross examination of Halpin and at oral argument that

Davis wiped his hard drive clean on February 15, 2005 before he was informed of the lawsuit

against him and prior to wiping the hard drive clean again in preparation for selling the computer

to Seymour is not evidence and will not be considered.

CONCLUSIONS OF LAW

I.      Copyright Infringement

To establish its claim of copyright infringement, Paramount must show by a

preponderance of the evidence: "(1) ownership of a valid copyright; and (2) unauthorized

copying of original elements of the plaintiff's work."  Dun & Bradstreet Software Servs., Inc. v.

Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002).  In other words, Paramount must show

that it is more likely than not that it owned a valid copyright to the motion picture and that Davis

copied, distributed, or otherwise infringed upon its copyright without authorization.  Paramount

demonstrated that it holds a valid United State Copyright Registration for the motion picture and

that it is the exclusive licensee of the motion picture.

With respect to the second element, "[c]opying refers to the act of infringing any of the

exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106,

including the rights to distribute and reproduce copyrighted material."  Kay Berry, Inc. v. Taylor

Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005).  Copying "may be demonstrated by showing that

the defendant had access to the copyrighted work and that the original and allegedly infringing

works share substantial similarities."  Id.  I find by a preponderance of the evidence that Davis

7

had a copy of the motion picture on his computer and distributed the motion picture via the eDonkey website.

I do not find that Davis was misidentified by BayTSP or Comcast. Although BayTSP could not identify the type of computer the infringer was using, the operating system of the computer that distributed the motion picture, or the version of eDonkey that was used the upload the motion picture, BayTSP identified and tracked the motion picture file's metadata, the date and time at which the motion picture was downloaded, the infringer's IP address, the percentage available for download on the infringer's computer, and the infringing computer's unique hash number. Although Comcast did not track the bandwidth usage of the relevant computer, it thoroughly reviewed its subscriber logs and, using information supplied by BayTSP, identified Davis' account as the origin of the infringement. It was therefore not necessary for BayTSP and Comcast to have information regarding the type of computer, the operating system, and version of eDonkey to determine that the computer at his IP address was used to distribute an infringing copy of the motion picture. Similarly, Paramount need not produce an eye witness to Davis' infringement to prove by a preponderance of the evidence that he illegally distributed the motion picture. Moreover, Lipscomb's mispronunciation of Davis' name as Jonathan rather than John in his testimony does not suggest that Comcast misidentified Davis because all of Comcast's documents that were produced upon request of Paramount and Order of this Court properly name the alleged infringer as John Davis. Although there remains the slim possibility that another unnamed individual distributed the motion picture on eDonkey using Davis' computer and account, I find it more likely than not that Davis was the individual using his own computer and his own account to distribute the motion picture. There is sufficient evidence to determine that

plaintiff has proved by a preponderance of the evidence that Davis was the infringer of

Paramount's copyright.

II.       Spoliation Inference

Although I need not rely upon the spoliation inference to find in favor of Paramount, I

find that the spoliation inference further supports my conclusion.  I direct the parties to my

discussion of the law with respect to the spoliation inference in my December 2, 2005

memorandum and Order.  See Paramount Pictures Corp. v. Davis, 234 F.R.D. 102 (E.D. Pa.

2005).  As I stated in that opinion:

> The spoliation inference sanction is appropriate in this case because . . . the information
> stored on the computer was within Davis' exclusive control, he destroyed that
> information by wiping his hard drive clean after receiving notice of this action, the
> information destroyed was relevant to Paramount's copyright infringement claim, and
> Davis knew or should have known that the information stored on his computer would
> later be necessary to confirm any copyright infringement or to demonstrate that he had not
> infringed on Paramount's copyright.

See id. at 112.  Comcast's letter to Davis with this Court's Order was clear that Paramount had

filed a lawsuit against an individual, that Paramount was seeking the identity of that individual,

and that Comcast was about to disclose Davis' identity to Paramount as that individual.  To the

extent that Coard gave Davis advice to the contrary, Coard was incorrect.  Moreover, although

Paramount has the ability to spend hundreds of millions of dollars to produce its movies, the fact

that Halpin did not perform an expensive procedure ordinarily used for antiterrorism efforts in an

attempt to retrieve the zeroed out data does not counteract the spoliation inference because Davis

bears the fault for the destruction of that data and Paramount is prejudiced by its loss.  I therefore

find that the motion picture was on Davis' computer at the time of the infringement.  I find it

more likely than not that Davis stored the motion picture on his computer and allowed it to be

distributed via the eDonkey website in violation of Paramount's copyright.

III.     Damages

        Paramount seeks $50,000 in statutory damages under 17 U.S.C. § 504(c) and a permanent

injunction precluding defendant from infringing upon its motion picture copyrights under 17

U.S.C. § 502(a).[2]

A.       Statutory Damages

        The Copyright Act of 1976 provides that a copyright infringer is liable either for a

copyright holder's actual damages and any additional profits of the infringer or statutory

damages.  17 U.S.C. § 504(a) (2006).  A copyright owner who elects to recover an award of

statutory damages, instead of actual damages and profits, may recover anywhere between $750

and $30,000 for each infringement "as the court considers just."  § 504(c)(1).  "[T]he court in its

discretion may increase the award of statutory damages" up to $150,000 where it finds that the

infringement was committed willfully.  § 504(c)(2).  By contrast, "the court in its discretion may

reduce the award of statutory damages to a sum of not less than $200" where the Court finds that

the infringer "was not aware and had no reason to believe that his or her acts constituted an

infringement of copyright," i.e. that the infringer was "innocent."  Id.  This reduction is

unavailable, however, if a notice of copyright appears on the infringed work.  17 U.S.C. § 401(d);

Schiffer Publ'g, Ltd. v. Chronicle Books, LLC, No. 03-4962, 2005 WL 67077, at *7 (E.D. Pa.

---

        [2]Paramount appears to have abandoned its claim for $38,437.68 in attorneys' fees and
costs of suit under 17 U.S.C. § 505.

2005) ("Schiffer 1").[3]  The provisions allowing movement beyond the standard statutory

damages range "apply only in 'exceptional cases' and the burden of proof rests on the party that

advocates a damages award outside the normal statutory range." Id. at *2.  For example, courts

often award heightened damages awards where a defendant is "a chronic copyright infringer, or

if, after receiving notice of plaintiff's claims, takes no action to investigate and merely continues

its' infringing behavior." Id. at *5.

   In determining the level of statutory damages, I am guided by the following factors: "(1)

expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the

strong public interest in insuring the integrity of the copyright laws; and (4) whether the

infringement was willful and knowing or innocent and accidental." Id.  The most important

factor to consider is the state of mind or willfulness of the infringer. Id.  Plaintiff may "prove

willfulness by showing either that the defendant actually knew it was infringing the plaintiff's

copyrights or recklessly disregarded that possibility." Id..  Although plaintiff bears the burden of

proving willfulness, it need not be shown directly, it may be inferred from the infringer's

conduct. Id.

   With this standard in mind, I will award Paramount $50,000 in statutory damages

because: (1) Davis was the first propagator of the motion picture on the eDonkey network; (2) he

placed the motion picture on the eDonkey network within a week of its theatrical release and

---

[3]An award of statutory damages serves two purposes, compensation and deterrence: "they
compensate plaintiff for the infringement of its copyright; and they deter future infringements by
punishing the defendant for its actions. Id. at *4.  At a minimum, "defendant should not reap a
benefit from its violation of the copyright laws [and] that statutory damages should exceed the
unpaid license fees so that defendant will be put on notice that it costs less to obey the copyright
laws than violate them." Id.

months prior to its home theater release; (3) Paramount lost significant profits as a result; (4) Davis' actions were willful; (5) Paramount incurs significant costs, approximately $40,000 per title, to locate and prosecute first propagators like Davis; and (6) this damage award is sufficiently high to deter other would be first propagators from infringing motion picture copyrights via online peer to peer networks.

B.      Permanent Injunction

Section 502(a) provides that a court may grant a temporary or permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Generally, permanent injunctions are proper where there has been a showing of past infringement and temporary injunctions are proper where there is a substantial likelihood of future infringement.  Schiffer 1 at *9.  Moreover, the Court of Appeals has held that "injunctions may be issued without a showing of willful or deliberate infringement."  Williams Elec. Inc. v. Artic Int'l, Inc., 685 F.2d 870, 878 (3d Cir. 1982).  A permanent injunction is appropriate here.

Paramount requests two permanent injunction orders: (1) enjoining Davis from directly or indirectly infringing Paramount's rights in the motion picture and any motion picture, whether now in existence or later created, that is owned or controlled by Paramount, including without limitation by using the internet to reproduce or copy any of Paramount's motion pictures, to distribute any of Paramount's motion pictures, or to make any of Paramount's motion pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of Paramount; and (2) ordering Davis to destroy all copies of Paramount's motion pictures that Davis had downloaded onto any computer hard drive or server without Paramount's authorization and to destroy all copies of those downloaded motion pictures transferred onto any

12

physical medium or device in Davis' possession, custody, or control.  I will grant Paramount's requested permanent injunction.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PARAMOUNT PICTURES CORP.          :                    CIVIL ACTION
                                  :
            v.                    :
                                  :
JOHN DAVIS                        :                    NO. 05-0316

<u>ORDER</u>

AND NOW, this 26th day of July 2006, following a bench trial on the merits, and upon

consideration of the parties' post trial briefs and oral argument, and for the reasons set forth in

the accompanying memorandum, it is ORDERED as follows:

1.      Judgment is entered in favor of plaintiff, Paramount Pictures Corp., and against

        defendant, John Davis, in the amount of $50,000;

2.      Pursuant to 17 U.S.C. § 502(a), defendant, John Davis, is enjoined from directly or

        indirectly infringing plaintiff, Paramount Picture Corp.'s, rights in the motion picture

        "Lemony Snicket's: A Series of Unfortunate Events," and any motion picture, whether

        now in existence or later created, that is owned or controlled by Paramount, including

        without limitation by using the internet to reproduce or copy any of Paramount's motion

        pictures, to distribute any of Paramount's motion pictures, or to make any of Paramount's

        motion pictures available for distribution to the public, except pursuant to a lawful license

        or with the express authority of Paramount; and

3.      Pursuant to 17 U.S.C. § 502(a), defendant, John Davis, is ordered to destroy all copies of

        plaintiff, Paramount Picture Corp.'s, motion pictures that he has downloaded onto any

        computer hard drive or server without Paramount's authorization and to destroy all copies

of those downloaded motion pictures transferred onto any physical medium or device in

his possession, custody, or control.

Defendant may appeal this judgment and Order by filing a notice of appeal with and paying the

$455 filing fee to the Clerk of Court for the Eastern District of Pennsylvania within thirty days of

this Order pursuant to 28 U.S.C. § 2107.  To the extent that defendant is unable to pay this filing

fee, he may file a motion to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  In forma

pauperis forms are available from the Clerk of Court in Room 2609 on the Second Floor of the

United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.


s/ Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.